IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| TANESHA REMBERT, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION FILE |
| v. | : | |
| | : | NO. 1:12-CV-02811-JOF-JSA |
| MOUNT VERNON INTERNAL | : | |
| MEDICINE; LINDA BAUER, | : | |
| DR. SHARON P. TINANOFF, DR. | : | |
| DR. CHARLES D. COHN, DR. | : | |
| JEFFREY P. POLEKOFF, and its | : | |
| Assigns, successors in interest, | : | |
| et al. | : | |
| | : | |
| Defendants. | : | |

## DEFENDANTS' OBJECTIONS TO ORDER AND NON-FINAL
## REPORT AND RECOMMENDATION ON A MOTION
## <u>FOR SUMMARY JUDGMENT [178]</u>

COME NOW Mount Vernon Internal Medicine ("MVIM"), Linda Bauer, Dr.

Sharon Tinanoff, Dr. Charles Cohn, and Dr. Jeffrey Polekoff, Defendants in the

above-styled matter (hereinafter, collectively, "Defendants") and, pursuant to

Fed.R.Civ.P. 72(b)(2) file these Objections to the Magistrate Judge's Order and Non-

Final Report and Recommendation on a Motion for Summary Judgment [178],

showing the Court as follows:

Defendants object to Magistrate Judge Anand's Report and Recommendation on the following grounds: the Magistrate Judge (1) failed to apply the proper legal standard in denying Defendants' Motion to Strike certain paragraphs of the Affidavit of Plaintiff; and (2) improperly made factual determinations, improperly applied legal principles, and failed to recognize pertinent undisputed material facts in denying Defendants' Motion for Summary Judgment on Plaintiff's Retaliation claim.

## A. THE MAGISTRATE JUDGE UTILIZED AN IMPROPER AND OVERLY BURDENSOME STANDARD IN APPLYING THE "SHAM AFFIDAVIT" RULE.

In response to Plaintiff's Affidavit, which she filed in response to Defendants' Motion for Summary Judgment, Defendants filed a Motion to Strike her Affidavit pursuant to the "sham affidavit" rule on the grounds that it contradicted her deposition testimony. *See* [139]. The Magistrate Judge correctly articulated the "sham affidavit" rule in the "Legal Standard" portion of his Order and Recommendation as follows:

> [a]n affidavit may be considered a 'sham' affidavit 'when a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact…[and that party attempts] thereafter [to] create such an issue with an affidavit that *merely contradicts, without explanation*, previously given clear testimony.' A court presented with an inconsistency in a party's testimony may disregard the later 'sham affidavit' in favor of the earlier deposition testimony.

> This 'sham affidavit' rule, however, as set forth in this Circuit and elsewhere, operates to nullify only *unexplained* variations in testimony.

> When the witness explains his reversal, courts are properly unwilling to discard the revised testimony as a sham.

Id. [178], pp. 4-5 (citations omitted) (emphasis added).  As noted above, the "sham affidavit" rule applies if two elements are met: (1) "the party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, and (2) the party attempts thereafter to create such an issue with an affidavit that *merely contradicts*, *without explanation*, previously given clear testimony." Id. (*citing* Tippens v. Celotex Corp., 805 F.2d 949, 954 (11th Cir. 1986); Dotson v. Delta Consol. Indus., Inc., 251 F.3d 780, 781 (8th Cir. 2001)) (emphasis added).

However, the Magistrate Judge failed to utilize the above standard in his application of the "sham affidavit" rule, and instead employed an entirely different and incorrect standard.  The Magistrate Judge's new standard is first articulated on page 8, footnote 4 of his Order, in which he inaccurately states that "[t]he question before the Court is simply whether a contradiction *so clearly and unambiguously exists* such as to justify the extreme remedy of striking Plaintiff's affidavit testimony as a matter of law as a 'sham.'"  Order[178] p. 8, fn. 4 (emphasis added).  The Magistrate Judge employed this erroneous "clear and unambiguous contradiction" standard repeatedly in his analysis of Defendants' Motion to Strike Plaintiff's Affidavit, as shown by the following excerpts of his Report and Recommendation:

3

However, in reading the Affidavit in its entirety and in the light most favorable to the Plaintiff, the Court finds no clear and unambiguous contradiction. Id. [178], p. 10.

The Court does not find that this discussion clearly and unambiguously contradicts the deposition. Id. [178], p. 11.

Thus, there is no contradiction the Court can clearly and unambiguously identify. Id. [178], p. 11.

The Court therefore finds no clear and unambiguous contradiction between this testimony and Plaintiff's statements in her deposition, or in her Affidavit. Id. [178], p. 14.

…Defendants significantly misunderstand the limited purpose of the "sham affidavit" rule. That rule is limited to where an affiant directly and clearly contradicts her own prior sworn testimony. Id. [178], p. 14.[1]

The Court finds no clear and unambiguous contradiction in the paragraphs at issue. Id. [178], p. 17.

Otherwise, the Court finds no clear and unambiguous contradiction. For example, that Plaintiff could not recall a date in her deposition, see Pl. Dep. [112-4] at 146:4-8, but then was able to recall that date in her later Affidavit, is not a clear and unambiguous contradiction meriting striking this paragraph. Id. [178], p. 21.

While the correct standard only requires that the party give "*clear answers*" to "*unambiguous questions*," and that the proffered affidavit "*merely contradicts, without explanation*" such testimony, the incorrect standard actually employed by the

---

[1] The Magistrate Judge's utilization of a "directly and clearly contradicts" standard is also contrary to the "merely contradicts without explanation" or "unexplained variation" standard of the "sham affidavit" rule. Id. [178], pp. 4-5.

4

Magistrate Judge requires that a contradiction between the party's deposition testimony and affidavit must "*so clearly and unambiguously exist*." Compare Id. [178], pp. 4-5 with Id. [178], p. 8, fn. 4. The newly created standard imposes a much higher burden on the party challenging the affidavit, because while the true standard only requires a "mere" contradiction or "variation" without explanation, the Magistrate Judge's standard requires a "clear and unambiguous" contradiction. Id.

Since the burden of showing this new standard is nearly impossible to meet, the Magistrate Judge, unsurprisingly, found that Defendants failed to meet this burden with respect to almost all of the paragraphs of Plaintiff's Affidavit. Moreover, the Magistrate Judge failed to give any consideration to the fact that Plaintiff failed to provide any explanation for any of the variations in her Affidavit. Defendants, therefore, object to the Magistrate Judge's Order to that extent he employed an incorrect and overly burdensome standard in ruling on Defendants' Motion to Strike.

**Plaintiff's Assault Claim Against Defendant Bauer**

Defendants object to the Magistrate Judge's recommendation regarding Count V of Plaintiff's Complaint (Assault) to the extent he recommends that this claim be permitted to proceed to trial against Defendant Bauer ("Ms. Bauer"). *See* Order and Recommendation, [178], pp. 84-86. The Magistrate Judge correctly recognized that "Plaintiff did not see and had no prior apprehension of the actual strike from Bauer on

5

February 17," and therefore, her assault claim could not proceed based on the alleged February 17, 2012 battery. Id. [178], p. 17.  In recommending that Plaintiff's assault claim be permitted to proceed against Ms. Bauer, the Magistrate Judge relies exclusively on Paragraph 10 of Plaintiff's Affidavit in which she states that, after the alleged battery, "Linda [Bauer] was screaming and cursing at me.  I was afraid of what she would do next.  I didn't know if she was going to physically hit me again or if I still had my job."  Id. [178], p. 85.  The Judge concluded that this paragraph constituted sufficient evidence for Plaintiff's assault claim against Ms. Bauer.  Id.

Defendants respectfully submit that, had the Magistrate Judge utilized the correct "sham affidavit" standard, he would have struck Paragraph 10 of Plaintiff's Affidavit because it "merely contradicts, without explanation," or contains "unexplained variations" in, Plaintiff's "clear" deposition testimony in response to "unambiguous questions," and he would have granted summary judgment as to Plaintiff's assault claim against Ms. Bauer.  While the Magistrate Judge recognized that "Plaintiff in her deposition never discussed her post-attack fear of being struck again," he also found that Defendants did not ask questions to precisely pin Plaintiff down on this subject.  Id. [178], pp. 17-18.  However, in fact, Defendants' counsel explicitly asked Plaintiff, during her deposition, to describe everything that happened after the alleged battery on February 17, 2012 in the following exchanges:

> Q:   So tell me what happened afterwards.  She told you to leave the office.  *What else?  What happened then?*
>
> A:   I went outside and called a family member and told them what happened, and then I called the police.

Pl. Dep. [112-4], p. 106:20-25 (emphasis added).

Defendants' counsel also asked Plaintiff to further elaborate on her feeling of being "stressed" after the alleged February 17, 2012 striking incident:

> Q:   Please explain as best you can, since you're in a better position to tell me, what you mean when you say stressed out.  Can you explain that to me?
>
> A:   Fearing for my job.
>
> Q:   Anything else?
>
> A:   And just didn't know what else was going to happen.  I didn't know if she was going to do something else she had did that because I never experienced something like that on a job.
>
> Q:   Anything else?
>
> A:   *That's it.*

Id. [112-4], p. 108:6-16 (emphasis added).

Defendants' counsel also specifically questioned Plaintiff concerning her interactions with other employees immediately after the alleged incident[2] and she testified that she just left the office and did not speak to anyone. Id. [112-4], pp. 108:17 - 109:4.  Finally, Defendants' counsel asked Plaintiff to describe all instances

---

[2] When Plaintiff returned to the office with the police officer, Plaintiff asked Ms. Bauer for an apology, which Ms. Bauer gave, and which Plaintiff accepted. Id. [112-4], p. 112.  There was no expression of fear of future assault by Plaintiff during her interaction with Ms. Bauer in the police officer's presence. Id. [112-4], pp. 112-3.

of harassment by Ms. Bauer, including the February 17, 2012 incident, and when asked if there was "[a]nything else?", Plaintiff responded, "*no"*. Id. [112-4], pp. 137:25 – 139:6 (emphasis added).

Throughout Defendants' counsel's questioning during Plaintiff's deposition, including specific questions asking her to describe *all other instances of harassment* by Ms. Bauer, Plaintiff did not *once* make mention of her alleged fear or apprehension of being hit again by Ms. Bauer after the February 17th incident.  Id. She did not mention this alleged fear of being hit again until November 1, 2013, over six months after her deposition, when she filed her Affidavit.  She made no effort to explain the contradiction between Paragraph 10 of her Affidavit and her deposition testimony.

In light of Plaintiff's clear answers to unambiguous questions in her deposition, which  Paragraph 10 contradicts without explanation, Paragraph 10 should be struck or disregarded.  Plaintiff's assault claim should not be allowed to survive based on the unexplained mere contradictory or variation in testimony contained in Paragraph 10 of her Affidavit. *See* Order [178], p. 85.  Accordingly, for the foregoing reasons, Ms. Bauer should be granted summary judgment as to Plaintiff's assault claim.

**B.     THE MAGISTRATE JUDGE INAPPROPRIATELY DETERMINED THAT EVIDENCE OF RETALIATION EXISTS.**

In his Order and Recommendation, the Magistrate Judge concluded that Ms. Bauer's alleged threats to fire Plaintiff for filing the EEOC charge amount to direct evidence of retaliation, even though Ms. Bauer did not make the decision to terminate Plaintiff.   While recognizing that Defendants had demonstrated legitimate, non-retaliatory reasons for Plaintiff's discipline, the Magistrate Judge nonetheless concluded, albeit incorrectly, that a factual dispute existed as to whether Defendants' asserted reasons were pretexts for retaliation.   Insufficient consideration was given to the fact that Plaintiff's performance-related problems were longstanding, dating as far back as 2009, and that this motivated the Defendant physicians' decision to terminate Plaintiff.   No consideration was given to the fact that the physicians, as the true decision makers, had tolerated Plaintiff's performance deficiencies for long enough before renewing the decision to terminate in March 2012 after several prior discussions addressing the issue of termination.  Def. SOMF [112-2] ¶¶ 87, 88.

Incidentally, as the Magistrate Judge noted, there were two documents issued by the EEOC: the March 29, 2012 Notice of Charge of Discrimination against MVIM and a subsequent Charge of Discrimination issued by the EEOC on April 10, 2012, which contains allegations of race discrimination and retaliation against MVIM.  *See* Order [178] p. 44; *see also* Pl. SOMF [123-2] ¶ 22.  Plaintiff testified that her meeting

with Ms. Bauer wherein Ms. Bauer allegedly threatened to fire her took place sometime *after* April 10, 2012, *after* MVIM had received the April 10, 2012 Charge. *See* Pl. dep. p. 120. The Magistrate Judge gave no consideration to the fact that since the physicians could not have received, and in fact did not receive, the March 29, 2012 EEOC Notice, which did not bear any reference to a claim of retaliation, or the April 10, 2012 Charge until sometime *after* April 10, 2012, they were not actually aware that Plaintiff had engaged in protected activity at the time they renewed their decision to terminate Plaintiff in March 2012 for legitimate, non-discriminatory, non-retaliatory reasons, i.e., poor work performance, Facebook use, and insubordination.

More importantly, the Magistrate Judge ignored the complete absence of any evidence to support that the physicians were actually aware of any alleged threats made by Ms. Bauer to Plaintiff during the two meetings held *after* receipt of the April 10, 2012 EEOC Charge. Plaintiff testified that she did not inform any of the physicians of the alleged threats made by Ms. Bauer and that none of the physicians threatened to fire Plaintiff. Pl. dep. p. 125-26. Further, little or no consideration was given to the fact that Plaintiff failed to make a showing that *each* of the reasons given for termination was false <u>and</u> rife with discriminatory/retaliatory animus.

**Standard for Retaliation**

It is well recognized in this Circuit that once "a plaintiff makes the requisite showing of a *prima facie* case,[3] the burden of production shifts to the employer to articulate a legitimate, nonretaliatory reason for its actions." McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). "If the employer articulates one or more reasons, then the presumption of retaliation is rebutted, and the burden of production shifts to the plaintiff to offer evidence that the alleged reason of the employer is pretext for illegal retaliation." Id. "A 'pretext for discrimination' [or retaliation] means more than an unusual act; it means something worse than a business error; 'pretext' means deceit used to cover one's tracks." Kulumani v. Blue Cross Blue Shield Ass'n, 224 F.3d 681, 684 (7th Cir. 2000) (*citing* Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 146-47 (2000)). Plaintiff may demonstrate pretext "by revealing such weaknesses, implausibilities, inconsistencies, incoherencies or

---

[3] Defendants object to the Magistrate Judge's conclusion that a *prima facie* case of retaliation has been established. The more recent Eleventh Circuit decision in Williams v. Waste Management, Inc., 411 Fed.Appx. 226 (11th Cir. 2011) held that a two month gap between protected activity and adverse employment is not close enough to establish a *prima facie* case of retaliation *without more*. "At a minimum, a plaintiff must generally establish that the employer was actually aware of protected expression at the time it took adverse employment action." Id. (*citing* Clover v. Total Sys. Serv., Inc., 176 F.3d 1346, 1354 (11th Cir. 1999). There is no evidence that the true decision makers, i.e., the physicians, were aware that Plaintiff had engaged in protected activity at the time they decided to terminate Plaintiff or that they were ever aware that Ms. Bauer had threatened to fire Plaintiff.

contradictions in [the employer's] proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." Springer v. Convergys Customer Mgmt. Group Inc., 509 F.3d 1344, 1348 (11th Cir. 2007).  "However, a reason is not pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." Id., at 1349 (emphasis in original).

Conclusory allegations, without more, are insufficient to show pretext. Mayfield v. Patterson Pump Co., 101 F.3d 1371, 1376 (11th Cir. 1996).  If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot merely recast the reason, but must "meet that reason head on and rebut it." Chapman v. Al Transport, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc).  As noted by the Eleventh Circuit in Snowden v. City of Daphne, 283 Fed.Appx. 693, 695 (11th Cir. 2008), "the pretext inquiry is concerned with the employer's perception of the employee's performance, not the employee's own beliefs." Id. (citing Holifield v. Reno, 115 F.3d 1555, 1565 (11th Cir. 1997) (holding that when an employer produced negative performance reviews, an employee's assertion of his own good performance is insufficient to defeat summary judgment).

### The ultimate decision makers lacked any knowledge of alleged threats of retaliation by Ms. Bauer or of Plaintiff's engagement in protected activity

The Magistrate Judge gave little weight to that fact that the physicians, who were the ultimate decision-makers, were unaware of, and did not take into account any

alleged threats of termination by Ms. Bauer towards Plaintiff concerning the filing of the EEOC charge, nor were they aware that Plaintiff had engaged in protected activity when they first renewed their decision to terminate Plaintiff in March 2012.  "When an employer makes a tentative decision before protected activity occurs, the fact that an employer proceeds with such a decision is not evidence of causation."  <u>O'Hara v. Univ. of West Florida</u>, 750 F.Supp.2d 1287, 1311 (N.D.Fla. 2010) (*citing* <u>Clark County Sch. Dist. v. Breeden</u>, 532 U.S. 268, 272 (2001) (holding that, where an employer contemplated transferring an employee before the employer learned that the employee filed a Title VII suit, the employer's decision to proceed "along the lines previously contemplated, though not yet definitively determined," did not establish evidence of causality); *See* <u>Lockaby v. United Testing Group, Inc</u>., 986 F.Supp. 1400, 1404 (N.D. Ga. 1997) (plaintiff had not presented any evidence that the decision makers had any knowledge of the alleged protected activity, and that lack of evidence was critical to deciding that suspicious timing cannot logically lead to an inference of discrimination where it is undisputed that the decision makers had no knowledge of plaintiff's protected activity, and so could not possibly have been motivated by the protected activity in terminating plaintiff); *see also* <u>Brungart v. BellSouth Telecommunications, Inc</u>. 231 F.3d 791, 799-800 (11th Cir. 2000).

In <u>Wu v. Southeast Atlantic Beverage Corp.</u>, 321 F.Supp.2d 1317 (N.D.Ga. 2004), a situation similar to the present case occurred where alleged expressions of discriminatory animus were made by a supervisor but not by the ultimate decision maker who had no knowledge of the supervisor's discriminatory intent. The plaintiff's strongest evidence of retaliation was a coworker's averment that his supervisor wanted to "get rid" of the plaintiff because he was "making trouble" by filing an EEOC charge. <u>Id</u>., at 1336. The Court noted that there was no evidence that the supervisor made such a statement to Anthony, the individual who made the decision to terminate the plaintiff's employment. <u>Id</u>. The Court further noted that Anthony denied any knowledge of the EEOC charge until the plaintiff told him about it at the time of his suspension. <u>Id</u>. In examining the level of the supervisor's involvement in the decision to terminate the plaintiff, the Court noted that "[t]o establish pretext, Plaintiff must show not only that [retaliatory] animus existed but that such animus tainted the ultimate decision maker's action." <u>Id</u>. (*citing* <u>Cooper v. Southern Co.</u>, 260 F.Supp.2d 1258, 1274-75 (N.D.Ga. 2003); *see also* <u>Stimpson v. City of Tuscaloosa</u>, 186 F.3d 1328, 1331 (11th Cir. 1999) ("When the biased recommender and the actual decisionmaker are not the same person or persons, a plaintiff may not benefit from the inference of causation that would arise from their common identity."), *cert. denied*, 529 U.S. 1053 (2000); <u>Jones v. Bessemer Carraway Med. Ctr.</u>, 151 F.3d 1321, 1322-

23 (11th Cir. 1998) (finding evidence that supervisor espoused discriminatory animus was not sufficient to avoid summary judgment where another individual independently made the decision to terminate the plaintiff's employment).

The Court in <u>Wu</u> pointed to the supervisor's testimony that Anthony made the decision to terminate the plaintiff and the supervisor merely acquiesced in that decision; the plaintiff's only substantive evidence to the contrary was that the supervisor prepared the separation notice after the decision to terminate. <u>Id.</u>, at 1336. The Court held that the supervisor's after-the-fact assistance does not demonstrate that he was a participant in the decision to terminate or that he influenced Anthony to make that decision. Further, even if the supervisor had encouraged Anthony to terminate the plaintiff, the evidence overwhelmingly demonstrated that Anthony would have made the same decision regardless of the supervisor's involvement. <u>Id</u>. "To prevail, plaintiff would have to prove that the discriminatory animus behind the recommendation, and not the underlying employee misconduct identified in the recommendation, was an actual cause of the other party's decision to terminate the employee." <u>Id</u>. (*citing* <u>Stimpson</u>, 186 F.3d at 1331) (quotation omitted).

Here, the physicians, not Ms. Bauer, were the true decision makers who chose to terminate Plaintiff and there is no evidence to contradict this fact. The Magistrate Judge did recognize this in his Order and referred to evidence supporting same,

including the fact that on August 7, 2012, Ms. Bauer testified that it was the physicians who directed her to terminate Plaintiff.  *See* Order [178] pp. 46, 74; *see also* Pl. SOMF [132-20] ¶ 38 (sic) at p. 16; *see* Baker v. Russell Corp., 372 Fed.Appx. 917, 920 (2010) (Plaintiff failed to demonstrate that employer's reason for terminating him was pretextual, given that the evidence, construed in the light most favorable to plaintiff, shows that plaintiff was terminated because Wink, not Williams, as the decision maker, believed that plaintiff had falsified time sheets; the record correctly showed that it was William's decision to terminate plaintiff.)

Even if Ms. Bauer threatened to fire Plaintiff for filing the EEOC charge, there is absolutely no indication that the Defendant physicians, as the ultimate decision makers, knew of that threat, knew that Plaintiff had engaged in protected activity when they renewed their decision to terminate Plaintiff, or that the EEOC charge was in any way related to the decision making process.[4]  Baker 372 Fed.Appx  at 920

---

[4] The Magistrate Judge improperly concluded, without any supporting factual evidence, that a jury could find that Ms. Bauer's intent to retaliate heavily influenced the termination and that the termination decision "was based in part on information Bauer *provided*."  Order [178] p. 74.  There is no evidence that Ms. Bauer actually communicated her alleged threats to Plaintiff, or alleged intent to retaliate, directly to the physicians.  Rather, the evidence shows that it was the physicians who decided, amongst themselves, to terminate Plaintiff in March 2012, instructed Ms. Bauer to discipline Plaintiff for cell phone use based upon their own observations, discussed Plaintiff's violations and poor performance issues amongst themselves, and then instructed Ms. Bauer to terminate Plaintiff.  Tinanoff Aff. ¶¶ 16-19.  Ms. Bauer could

(even if racial graffiti was present at the workplace, there is no evidence that the decision maker knew of the graffiti or that it was in any way related to the decision making process); *see also* Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998) ("[R]emarks by non-decision makers *or* remarks unrelated to the decision making process itself are not direct evidence of discrimination.") (emphasis added); Stimpson, 186 F.3d at 1331.

As the true decision makers, the physicians acted independently of any purported threat of termination by Ms. Bauer when they renewed the decision to terminate Plaintiff.  There is no evidence, even in such a small practice, that the physicians knew of Ms. Bauer's alleged threats to Plaintiff, were directly influenced by those threats, or acted as "rubber stamps" for Ms. Bauer's actions in deciding to terminate Plaintiff.  The physicians' proffered reasons for termination were based on

_____

not have "heavily influenced" the termination decision, particularly as she had been told that she could not discipline employees in the future in the absence of the physicians. Polekoff dep. p. 45. Most significantly, Plaintiff testified that Ms. Bauer threatened to fire her on February 17th saying the physicians would fire her but when she brought this to Dr. Cohn's attention, he told her that nobody was going to be fired and that he would handle the situation. Pl. dep. p. 173; Cohn dep. p. 43. Clearly, Ms. Bauer had no influence over Plaintiff's termination because Plaintiff was not fired at that time; she could not possibly have "heavily influenced" the physicians' decision to terminate Plaintiff based on the evidence because that decision was for the physicians *alone* to make.  Even if, as the Magistrate Judge stated, Ms. Bauer was at least consulted as part of discussions relating to personnel decision, there is no evidence that she was consulted when the termination decision was renewed or that she "heavily influenced" that decision. *See* Order [178] p. 73.

independent, legitimate considerations, untainted by knowledge that protected activity had occurred, and thus, are devoid of retaliation.   There is no evidence that the physicians would not have decided to terminate plaintiff based on these reasons or proceeded with the decision regardless of Ms. Bauer's involvement. Thus, it was inappropriate for the Magistrate Judge to conclude that Ms. Bauer's alleged remarks towards Plaintiff constitute direct evidence of retaliation in denying Defendants' Motion for Summary Judgment as to Plaintiff's Retaliation claim.

### Plaintiff failed to make a showing of pretext

Plaintiff is required to demonstrate that *each* of Defendants' legitimate, non-retaliatory reasons for her termination was merely a pretext for unlawful retaliation. The Magistrate Judge improperly concluded that Plaintiff had carried her burden in this regard.  *See* Crawford v. City of Fairburn, GA, 482 F.3d 1305, 1308 (11th Cir. 2007) ("If the employer proffers more than one legitimate, nondiscriminatory reason, the plaintiff must rebut *each* of the reasons to survive a motion for summary judgment.") (emphasis added).  Insufficient consideration was given to the fact that there were a series of independent intervening acts of misconduct by Plaintiff, which occurred after she engaged in protected activity, that motivated the physicians to proceed with termination without further delay.  (Johnson v. Progress Rail Serv.

Corp., 2011 WL 5510166 at 7 (M.D. Ala.) (Intervening acts of misconduct can break any causal link between protected conduct and the adverse employment action).

"The Eleventh Circuit has repeatedly emphasized that a federal court should not "'act as a super personnel department that second-guesses employers' business judgments.'" Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1092 (11th Cir. 2004) (quoting Lee v. GTE Fla., Inc., 226 F.3d 1249, 1254 (11th Cir. 2000)). The Court does not analyze "whether employment decisions are prudent or fair.  Instead [its] sole concern is whether unlawful discriminatory animus motivates a challenged employment decision." Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1361 (11th Cir. 1999).  "Whether an employee actually engaged in the misconduct that was reported to the decision-maker is irrelevant to the issue of whether the decision maker believed that the employee had done wrong." Baker, 372 Fed.Appx. at  920; see also Elrod v. Sears, Roebuck & Co., 939 F.2d 1466 (11th Cir. 1991).

It is undisputed that Plaintiff used her cell phone and was reprimanded for this, and was persistently tardy and warned for same in April, 2012.  Def. SOMF [112-2] ¶¶ 80, 81, 86; Pl. dep. pp. 69-71, 184; Tinanoff Aff. ¶¶ 10, 15-18.  Plaintiff does not deny that she was tardy several times or that she was warned for cell phone usage. Def. SOMF [112-2 ¶¶ 80, 81; Pl. dep. pp. 69-71, 184.  As the Magistrate Judge noted, Defendants believed that Plaintiff used her cell phone excessively while she was at

work.  Order [178] p. 39; Pl. SOMF [123-2] ¶ 33.  The Magistrate Judge also noted that Plaintiff does not specifically dispute that after the incident, she refused to take direction from Ms. Bauer.  Order [178] p. 57; Pl. Resp. SOMF [124] ¶ 82.  There is no evidence that the physicians' decision to finally proceed with termination based on these acts of misconduct, post engagement in protected activity, was false or pretextual for retaliation.  Plaintiff did not meet *each* of these reasons head on and rebut *each*.  <u>Wilson</u>, 376 F.3d at 1088.  These proffered reasons are certainly ones that might motivate a reasonable employer to terminate Plaintiff.

Likewise, the physicians' belief that Plaintiff's history of performance-related problems was ongoing, that she was on Facebook, and that she was insubordinate are additional reasons that might motivate a reasonable employer in deciding to terminate Plaintiff.  The evidence shows that the physicians complained to Ms. Bauer about Plaintiff's filing errors, Order [178] p. 34, Def. SOMF [112-2] ¶ 20; Dr. Cohn complained that he stood behind Plaintiff and observed her on Facebook and that she was not to use Facebook during work hours, Order [178] p. 37, Def. SOMF [112-2] ¶ 29; and Plaintiff refused to take direction from Ms. Bauer, Order [178] p. 45, Def. SOMF [112-2] ¶ 82; Pl. Resp. SOMF [124] ¶ 82.  Simply quarreling with or disagreeing with those reason is not sufficient to establish pretext.  *See* <u>Chapman v. AI Transport</u>, 229 F.3d 1012, 1030 (11th Cir. 2000).

The Magistrate Judge overlooked the fact that Plaintiff failed to show that Defendants' explanations - history of poor work performance, continuous work place misconduct (April 27th and 30th reprimands), insubordination, and Facebook use - were *both* false and that discriminatory (or retaliatory) animus was the real reason behind the termination. *See* Brooks v. County Comm'n of Jefferson County, Ala., 446 F.3d 1160, 1163 (11th Cir. 2006). Since there is no dispute that Plaintiff engaged in workplace misconduct – i.e. repeated tardiness and cell phone use - there was nothing false about the physicians' reliance upon these ongoing acts, which fueled their determination to proceed with renewed termination decision. There is no evidence that any of these reasons have no basis in fact. *See* Holston v. Sports Authority, Inc., 136 F.Supp.2d 1319, 1338-39 (N.D. Ga. 2000); Johnson v. Gwinnett County School District, 2012 WL 5987584 (N.D.Ga) (plaintiff failed to point to any evidence casting doubt on the fact that the employer regarded her performance as deficient).

As the Magistrate Judge correctly noted, it is undisputed that Plaintiff did have performance-related problems even if it was *at some point* during her employment, which the physicians were well aware of, prior to Plaintiff engaging in protected activity. There is nothing false about the physicians' perception that Plaintiff's poor work performance was ongoing further cementing their decision to terminate her. Further, there is nothing false about their belief that Plaintiff was insubordinate as she

was, in fact, insubordinate.   "A plaintiff's self-serving assertion that she was not insubordinate does not alone establish that she was subjected to unlawful discrimination or retaliation, and whether Plaintiff's conduct was insubordinate is not an issue for this Court to referee."  Seldon v. Total System Serv., Inc., 653 F.Supp.2d 1349, 1381 (M.D. Ga. 2009) (*quoting* Wilson, 376 F.3d at 1092).  There is certainly nothing false about the physicians' belief that Plaintiff was repeatedly engaging in Facebook use in violation of company policy, a belief fueled by the February 17, 2012 incident, even after Dr. Cohn's observation of Plaintiff's Facebook use in 2011. Further, Plaintiff testified that she logged onto Facebook at least every other day (Def. SOMF [112-2] ¶ 27; Pl. dep. pp. 46-47) and that she used the internet on her assigned computer during her employment for Facebook mainly.[5] Pl. dep. pp. 40, 42.

The fact that the Separation Notice only contained one of the reasons for termination is not enough to cast suspicion on the physicians' legitimate non-retaliatory reasons for termination, particularly as another reason - Facebook use - was verbally communicated to Plaintiff (Def. SOMF ¶ 84), in addition to insubordination,

---

[5] Despite this clear testimony, the Magistrate Judge improperly refused to strike subsequent variations to this testimony in Paragraph 11 of Plaintiff's Affidavit wherein Plaintiff testified that she *did not* use the company computer to log onto Facebook. Order [178] pp. 12-13; see Pl. Aff. [125-1] ¶ 11.

the very same day Ms. Bauer prepared the Separation Notice,[6] and particularly as it is undisputed that Plaintiff did engage in these acts. The fact that poor work performance or the subsequent intervening acts of misconduct were not specifically communicated to Plaintiff on the day she was fired does not change the fact that her performance was poor, that the physicians believed this to be so, that she engaged in acts of misconduct, that the physicians believed this to be so, and that ultimately the physicians' decision to terminate Plaintiff for these and other reasons was non-retaliatory.

## Absence of discriminatory/retaliatory animus

The Magistrate Judge is obligated to explore whether, in addition to evidence of falsehood behind each explanation for termination, discrimination/retaliation was the real reason behind the physicians' decision to terminate. *See* Rabb v. Georgia Pacific, LLC, 2010 WL 2985575 * 16 (S.D.Ala.) (Plaintiff has not shown that a discriminatory reason more likely motivated the employer's termination decision inasmuch as the primary individual with the alleged racial bias had no involvement in the decision to terminate plaintiff).  There is no evidence whatsoever that the Defendant physicians exhibited any racial bias or other discriminatory or retaliatory animus toward Plaintiff. *See* Id. In fact, the Magistrate Judge found no evidence that the real reason for

_____

[6] Dr. Cohn testified that he is not familiar with the Separation Notice. Cohn dep. p. 38.

Plaintiff's termination was race, yet concluded that evidence of pretext exists based on the unsupported assumption that the "decision [to terminate] was made in substantial part based on information Bauer *provided*." Order [178] p. 74. As discussed earlier, the physicians, as the true decision makers, made their own independent observations of Plaintiff's misconduct and performance issues and decided to terminate Plaintiff without Ms. Bauer's involvement. There is no evidence that discriminatory/retaliatory animus motivated their decision. Thus, the Magistrate Judge's conclusion that Ms. Bauer's alleged threats is sufficient evidence of pretext is incorrect.

For all of the foregoing reasons, Defendants respectfully request that the Court **REJECT** the part of the Report and Recommendation of the Magistrate Judge denying their Motion to Strike certain paragraphs of Plaintiff's Affidavit, denying Defendants' Motion for Summary Judgment as to Plaintiff's assault claim against Ms. Bauer, and denying Defendants' Motion for Summary Judgment as to Plaintiff's retaliation claim against Defendants.

**SCRUDDER, BASS, QUILLIAN,
HORLOCK TAYLOR & LAZARUS LLP**

900 Circle 75 Parkway    /s/ Chiaka U. Adele
Suite 850                Chiaka U. Adele
Atlanta, GA  30339       State Bar No. 005111
Telephone:  (770) 612-9200    David C. Rhodes
Facsimile:  (770) 612-9201    State Bar No. 340295
cadele@scrudderbass.com    Attorneys for Defendants
drhodes@scrudderbass.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 15, 2014, I electronically filed **DEFENDANTS' OBJECTIONS TO ORDER AND NON-FINAL REPORT AND RECOMMENDATION ON A MOTION FOR SUMMARY JUDGMENT [178]** with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorneys of record:

> Valerie V. Vie, Esq.
> 5682 Palazzo Way
> Suite 102
> Douglasville, GA  30134

> Lucinda Jones, Esq.
> P.O. 90543
> East Point, GA  30364

This 15th day of August, 2014.

/s Chiaka U. Adele[7]
Chiaka U. Adele

---

[7] I hereby certify that this document has been prepared in accordance with Local Rule 5.1(B) of the Northern District of Georgia.