IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TANESHA REMBERT,  :

     Plaintiff,  :

v.  :

MOUNT VERNON INTERNAL  :     CIVIL ACTION NO.
MEDICINE; LINDA BAUER; DR.  :     1:12-CV-2811-WCO
SHARON P. TINANOFF; DR.  :
CHARLES D. COHN; DR. JEFFREY
P. POLEKOFF, and its assigns,
successors in interest, et al.

     Defendants.

## ORDER

This matter is before the court on Defendants' motion for summary judgment [112]; the Final Report and Recommendation of Magistrate Judge Justin S. Anand [178]; Defendants' objections thereto [180]; and Plaintiff's response [181].

Plaintiff, Tanesha Rembert, filed suit against Defendants, Mount Vernon Internal Medicine, Linda Bauer, Dr. Sharon P. Tinanoff, Dr. Charles D. Cohn, and Dr. Jeffrey P. Polekoff, on August 14, 2012, alleging that Defendants subjected her to a hostile environment and discriminated against her on the basis of her race in violation of 42 U.S.C. § 1981 and retaliated against her by terminating her. Plaintiff also raised state law torts of intentional infliction of emotional distress, assault, and battery.

Magistrate Judge Justin S. Anand issued a thorough Report and Recommendation in which he recommends granting Defendants' motion for summary judgment on Plaintiff's

race and hostile work environment claims.  Magistrate Judge Anand also recommends granting Defendants' motion for summary judgment on Plaintiff's intentional infliction of emotional distress claim and Plaintiff's assault and battery claims against Defendants Mount Vernon Internal Medicine, Dr. Sharon P. Tinanoff, Dr. Charles D. Cohn, and Dr. Jeffrey P. Polekoff.  Plaintiff has filed no objections to Magistrate Judge Anand's recommendations on these claims.  Having read and considered the Report and Recommendation, the court GRANTS Defendants' motion for summary judgment on Plaintiff's federal race and hostile work environment claims, as well as Plaintiff's state law tort of intentional infliction of emotional distress.  The remaining claims are retaliation and assault and battery (the latter two against Defendant Bauer only).

The court presumes familiarity with the detailed factual discussion in the Report and Recommendation and addresses facts here only so far as necessary to consider Defendants' objections.  Mount Vernon Internal Medicine is a small office of less than 15 employees, including three doctors and the remaining employees as administrative staff to assist the doctors.  There is no dispute that at a time in 2009 and 2010, Plaintiff experienced difficulty in fulfilling the duties of her job because another employee, with whom she had shared duties, left the office.  The record also contains substantial back-and-forth about difficulties in late 2011 and 2012 regarding the use of office computers and/or phones for personal business during the work day.

Ultimately, issues came to a head on February 17, 2012, when Plaintiff and office manager, Linda Bauer, got into a discussion about Plaintiff's use of Facebook and Bauer

struck Plaintiff with a medical file folder.  Plaintiff called 911 and Sandy Springs police

responded to the incident.  Bauer apologized to Plaintiff and Plaintiff did not press charges.

Bauer told the physicians about the incident.  Plaintiff spoke with Dr. Cohn.  Bauer was

reprimanded for the incident.

In her deposition, Plaintiff testified about the February 17th incident as follows:

> Q:    So tell me what happened afterwards.  She [Bauer] told you to leave
>       the office.  What else? What happened then?
> A:    I went outside and called a family member and told them what
>       happened, and then I called the police.

*See* Plaintiff's Depo., at 106.  Plaintiff further testified:

> Q:    Please explain as best you can, since you're in a better position to tell
>       me, what you mean when you say stressed out.  Can you explain that
>       to me?
> A:    Fearing for my job.
> Q:    Anything else?
> A:    And [I] just didn't know what else was going to happen.  I didn't know
>       if she was going to do something else since she had did [sic] that
>       because I never experienced something like that on a job.
> Q:    Anything else?
> A:    That's it.

*Id.* at 108.  Defendants' counsel later asked Plaintiff to describe all other instances of

harassment, and Plaintiff did not testify as to any fear of further battery by Bauer.  *Id.* at

137-39.

In her affidavit filed in response to Defendants' motion for summary judgment,

Plaintiff testified as follows:

> I did not yell or scream at Ms. Bauer.  I cried out: you hit me.  According to
> Linda, Ms. Torrence was in the front office at the time.  Linda followed me
> out of the front office area.  Linda was screaming and cursing at me.  I was

3

afraid of what she would do next.  I didn't know if she was going to physically hit me again or if I still had my job.

*See* Rembert Aff., ¶ 10.

On March 29, 2012, the EEOC issued a Notice of Charge of Discrimination by Plaintiff against Mount Vernon Internal Medicine.  Notice of a subsequent Charge of Discrimination was issued by the EEOC on April 10, 2012.  Plaintiff testified that Bauer and she had words on several occasions about Plaintiff's charges of discrimination.  Plaintiff alleges that Bauer told her that she (Bauer) would terminate Plaintiff for filing the EEOC charge.  Plaintiff also testified that Bauer told her that "my ass was going to be fired once the case was dismissed."  Bauer denies this.  Bauer responded to the charges of discrimination and asked the EEOC to dismiss them because the medical practice employed less than 15 people.  The charges were dismissed on this basis on May 21, 2012.

Plaintiff was terminated nine days later on May 30, 2012.  Plaintiff's separation notice listed "insubordination" as the reason.  On the day of her termination, Plaintiff said to Bauer: "No, you're firing me because the case is dismissed" and according to Plaintiff, Bauer responded: "Yeah, you're right."

Dr. Tinanoff testified via declaration that the decision to terminate Plaintiff was made in "March and April 2012."  *See* Tinanoff Decl., ¶ 16.  She testified the physicians made this decision based on Plaintiff's "repeated poor performance, and insubordination."  *Id.*  "We determined that it was time to carry out termination [of] Plaintiff based on her lack of improvement [and] insubordination."  *Id.*  In their statement of material facts, Defendants

4

also contend that the physicians "resolved in early May 2012 to carry out Plaintiff's termination."  *See* Docket Entry [112-2], ¶ 89.

**Retaliation**

Magistrate Judge Anand recommends that the court deny Defendants' motion for summary judgment on Plaintiff's claim of retaliation.  *See* Report and Recommendation, at 66-81.  Magistrate Judge Anand found it was undisputed that Plaintiff had engaged in protected activity by filing charges of discrimination with the EEOC on March 29 and April 10, 2012, and that Plaintiff suffered an adverse employment action when she was terminated on May 30, 2012.  *Id.* at 69-70.

The parties dispute, however, whether Plaintiff can show a causal connection between the protected activity and her termination.  *Id.* at 70.  Magistrate Judge Anand rejected Defendants' argument that the passing of eight weeks was too long for a temporal connection.  *Id.* at 71.  He noted that the Eleventh Circuit has found seven weeks to be close enough.  *Id.*  Further, he found that Plaintiff testified that Bauer directly threatened her with termination for filing the charge, telling Plaintiff that once the charge was dismissed, she would be fired.  *Id.* at 71-72.  And, in fact, Plaintiff was terminated approximately one week after the practice received a notice of dismissal from the EEOC.  *Id.* at 72.

Magistrate Judge Anand also noted that Bauer's testimony is direct evidence of causation.  *Id.* at 73. Defendants' argument that the physicians had made the decision to terminate Plaintiff based on Plaintiff's poor performance does not negate this direct evidence of causation and only creates a dispute of fact that has to be resolved by the jury.  Further,

there is sufficient evidence in the record from which a jury could conclude that Bauer was "at least consulted" in the decision-making process on Plaintiff's termination and provided the information that allegedly led to the physicians' decision to terminate her.  *Id.* at 74 (citing Tinanoff's declaration, which stated, "Ms. Bauer brought these issues to my attention.").

Because Magistrate Judge Anand found that Plaintiff could make out a prima facie case of discrimination, he then considered Defendants' legitimate non-discriminatory reason for termination and Plaintiff's argument of pretext.  *Id.* at 75-81.  He noted that although Defendants had proffered evidence into the record that Plaintiff had a history of performance problems and issues of using the computers and her phone for personal business, Plaintiff had strong evidence of pretext, primarily through the alleged statements Bauer made to her. *Id.* at 77.  Magistrate Judge Anand also noted that Defendants' proffered reason for termination floated between insubordination, inappropriate use of Facebook, and repeated poor performance, which also could be indicative of pretext.  *Id.*  Further, Plaintiff disputes much of the evidence Defendants point to in support of their legitimate non-discriminatory reason for termination.

Defendants object to the Magistrate Judge's recommendation that summary judgment be denied on Plaintiff's claim of retaliation.  Defendants first argue that the Magistrate Judge gave "[i]nsufficient consideration" to "the fact that Plaintiff's performance-related problems were longstanding, dated as far back as 2009, and that this motivated the physicians' decision to terminate Plaintiff."  *See* Objections, Docket Entry [180], at 9.  The court

disagrees.   Magistrate Judge Anand spent ample time reviewing Defendants' view of Plaintiff's job performance.  He correctly found, however, that in light of the direct evidence of retaliation from Bauer's comments, the jury could determine that Plaintiff's performance was not the true reason for her termination.

Defendants next contend that the physicians had already made their decision to terminate Plaintiff before they received Plaintiff's charges of discrimination on March 29 and April 10.[1]  The evidentiary record does not support this contention.  Dr. Tinanoff does ***not*** testify in her declaration that the decision to terminate was made ***prior*** to the time Plaintiff filed her charge of discrimination.  Rather, Dr. Tinanoff testified, "Plaintiff's termination had nothing to do with the EEOC ***Notice of Dismissal*** because the decision to terminate Plaintiff preceded the Notice of Dismissal and had been ongoing for a few years." *See* Tinanoff Decl., ¶ 16 (emphasis added).  The Notice of Dismissal is not the relevant point in time; rather, the question is whether the decision to terminate had been made prior to when Plaintiff filed her charges of discrimination – the relevant protected activity.  The only evidence Defendants point to is that the decision to terminate had been made in "March and April," or "early May."  Neither of these time periods is conclusively prior to Plaintiff's filing of her charges of discrimination.  Thus, Defendants' assertion that the physicians were

---

[1]Defendants seem to imply that only the second charge of discrimination matters because it is the one that alleged retaliation.  *See* Objections, Docket Entry [180], at 9-10. This is not the correct analytical lens.  As soon as Defendants knew that Plaintiff filed any charge of discrimination, the theoretical basis for retaliation was available.  The charge itself does not have to have alleged retaliation.

not "aware that Plaintiff had engaged in protected activity when they first renewed their decision to terminate Plaintiff in March 2012", *see* Objections, at 13, is wholly unsupported in the record. Defendants' own testimony puts to rest the notion that a termination decision was made in March 2012, prior to the filing of her charges of discrimination.

Finally, Defendants aver that there is no evidence in the record that the physicians were aware of the retaliatory threats allegedly made by Bauer. Again, this is not the critical analytical point. Plaintiff does not have to show that the physicians were aware of Bauer's comments to get to a jury on retaliation. As the Magistrate Judge noted, there is more than ample evidence in the record from which a jury could conclude that Bauer had substantial influence over what the physicians would decide with respect to Plaintiff's termination. Further, if the jury believes Plaintiff's testimony, Bauer had a retaliatory motive to use her influence to convince the physicians to terminate Plaintiff. If so, then Bauer's bias could have influenced each of the reasons Defendants offered for termination. Defendants can certainly argue to the jury that the physicians would have terminated Plaintiff regardless of what Bauer told Plaintiff, but that is not the only conclusion a reasonable jury could reach based on the evidence in the record, and therefore it is not a basis upon which the court could grant Defendants' motion for summary judgment.[2]

_____

[2]Defendants point to Plaintiff's testimony that when she told Dr. Cohn that Bauer was going to fire her, Dr. Cohn said that nobody was going to be fired and he would handle the situation. *See* Objections, Docket Entry [180], at 16-17 n.4 (citing Plaintiff's Depo., at 173 and Cohn Depo., at 43). This argument actually cuts against Defendants. Plaintiff did end up getting terminated, so obviously Cohn's mind had to have changed from the time he assured Plaintiff she would not be terminated.

For the foregoing reasons, as to Plaintiff's claim of retaliation, the court ADOPTS the Report and Recommendation of the Magistrate Judge as the ORDER of the court and DENIES Defendants' motion for summary judgment on this claim.

**Assault**

In his Report and Recommendation, Magistrate Judge Anand notes that an assault occurs "when all the apparent circumstances, reasonably viewed, are such as to lead a person reasonably to apprehend a violent injury from the unlawful act of another." *See* Report and Recommendation, at 84 (quoting *Everett v. Goodloe*, 268 Ga. App. 536, 543 (2004)). He agreed with Defendants that Plaintiff could not have been apprehensive of any contact in the initial conflict because her back was turned to Bauer. *Id.* at 85. However, Magistrate Judge Anand found that Plaintiff's affidavit testimony – that she was "afraid of what [Bauer] would do next. I didn't know if she was going to physically hit me again" – was sufficient evidence from which a reasonable jury could conclude that Plaintiff was in "reasonable apprehension" that Bauer would hit her again. *Id.*

Defendants object to the Report and Recommendation of the Magistrate Judge, arguing that he mis-applied the "sham" affidavit rule to the affidavit Plaintiff filed in conjunction with her response to Defendants' motion for summary judgment. Defendants argue that the court should strike Paragraph 10 of Plaintiff's affidavit as contradicting Plaintiff's prior deposition testimony.

Due to the aggressive manner in which the parties chose to litigate this case, the Magistrate Judge was required to spend the first quarter of his Report and Recommendation

AO 72A
(Rev.8/82)

addressing Defendants' challenges to a myriad of paragraphs from Plaintiff's affidavit. The court finds the Magistrate Judge correctly identified the standard for "sham" affidavits. *See* Report and Recommendation, at 2-6 (citing *Van. T. Junkins & Assoc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984) (affidavit testimony which directly contradicts deposition testimony is "sham" and should be disregarded)). Although the Magistrate Judge addressed numerous paragraphs of Plaintiff's affidavit, the court focuses only on her testimony with respect to the alleged assault.[3]

In the Eleventh Circuit, "a party cannot give clear answers to unambiguous questions in a deposition and thereafter raise an issue of material fact in a contradictory affidavit that fails to explain the contradiction." *Rollins v. TechSouth, Inc.*, 833 F.3d 1525, 1530 (11th Cir. 1987). The court must be careful to distinguish "between discrepancies which create transparent shams and discrepancies which create an issue of credibility or go to the weight of the evidence." *Tippens v. Celotex*, 805 F.2d 949, 953 (11th Cir. 1986).

Here, Plaintiff testified in her deposition that she "just didn't know what else was going to happen" and "I didn't know if she was going to do something else since she had did [sic] that . . ." The court finds these statements encompass the possibility that Bauer might hit Plaintiff again. Although Plaintiff did not specifically state "hitting" as one of her concerns, she clearly testified that she was worried about what would happen or if Bauer would do something else. The court finds that Plaintiff's specific statement in her affidavit

---

[3]The remaining challenged paragraphs of Plaintiff's affidavit are either not relevant to any of her causes of action or not relevant to the objections raised by Defendants.

that she "didn't know if she was going to physically hit me again" does not contradict her deposition testimony and, therefore, is not a "sham."

Because the court does not find that Paragraph 10 of Plaintiff's affidavit should be stricken as a "sham," it can form the evidentiary support from which a reasonable jury could conclude that Plaintiff had "reasonable apprehension" that Bauer would hit her again. Therefore, as to Plaintiff's claim of assault, the court ADOPTS the Report and Recommendation of the Magistrate Judge as the ORDER of the court and DENIES Defendants' motion for summary judgment.

**Conclusion**

The court GRANTS IN PART AND DENIES IN PART Defendants' motion for summary judgment [112] and ADOPTS as the ORDER of this court the Final Report and Recommendation of Magistrate Judge Justin S. Anand [178].

The parties are DIRECTED to file a pre-trial order on the remaining claims of retaliation and assault and battery within thirty (30) days from the date of this order.

**IT IS SO ORDERED** this 4th day of September, 2014.

s/*William C. O'Kelley*
WILLIAM C. O'KELLEY
SENIOR UNITED STATES DISTRICT JUDGE

11

AO 72A
(Rev.8/82)